JUAN JOSE SALGUERO, et al., v.
JVK OPERATIONS LIMITED
Civil Action No.: 12-CV-0635

# Exhibit A

Settlement Agreement

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JUAN JOSE SALGUERO, OLVIN RAMON
RODRIGUEZ, ALICIA RIVERIA GARCIA,
THANIA VELASCO, CARLOS ROBERTO
GARCIA, and YOVANY SIFORTES PINTO, on
behalf of themselves and all others similarly situated,

                                     Plaintiffs,

-against-

JVK OPERATIONS LIMITED, VINOD SAMUEL,
and MICHAEL CONNELL,

                                     Defendants.
------------------------------------------------------------------x

Civil Action No.: 12-CV-0635(JFB)(AKT)

Revised Settlement Agreement

This Revised Joint Settlement and Release Agreement (hereinafter the "Agreement"), is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined), on the one hand, and Defendants (as hereinafter defined).

## RECITALS

*WHEREAS,* JUAN JOSE SALGUERO, OLVIN RAMON RODRIGUEZ, ALICIA RIVERIA GARCIA, THANIA VELASCO, CARLOS ROBERTO GARCIA, and YOVANY SIFORTES PINTO filed an Amended Class Action Complaint (as hereinafter defined); and

WHEREAS, the Amended Class Action Complaint asserted class claims under the New York Labor Law and collective claims under the Fair Labor Standards Act and sought recovery of unpaid overtime wages, unpaid spread of hours pay, and retaliation claims on behalf of plaintiff Juan Jose Salguero, as well as injunctive and declaratory relief under the Fair Labor Standards Act and the New York Labor Law; and

WHEREAS, Defendants denied and continue to deny all of the allegations made by Plaintiffs in the Litigation (as hereinafter defined) and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Class Counsel (as hereinafter defined) has investigated and prosecuted this case, including, but not limited to, interviewing putative class members and opt-in plaintiffs, reviewing documents produced by Defendants, and reviewing and analyzing payroll data; and

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiffs and the Class (as hereinafter defined); and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Class, or might result in a recovery that is less favorable to the Class than that provided for in this Agreement, and that said possible recovery would likely not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Class.

WHEREAS, the parties had prepared, signed, and begun compliance with the terms of the Joint Settlement and Release Agreement previous signed by the parties, and the Court has advised the parties of the need for changes to be made to the terms of certain portions of the settlement notice process for the collective class under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the parties wish to modify the terms of the initial Joint Settlement and Release Agreement as indicated herein;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

    The defined terms set forth herein shall have the meanings ascribed to them below.

    1.1   **Class; Class Member.** "Class" shall mean all persons who have worked for defendants JVK Operations Limited, Vinod Samuel and Michael Connell ("JVK") as hourly, non-exempt employees on the production and distribution lines of the JVK facility located in Amityville, New York (excluding drivers, supervisors, and management personnel) anytime between February 9, 2006 and March 31, 2012. A member of the Class is a "Class Member." An agreed-upon list of all Class Members (and other information) is attached hereto as Exhibit A.

    1.2   **Claims Administrator.** "Claims Administrator" shall mean Settlement Services, Inc.

    1.3   **Class Counsel.** "Class Counsel" shall mean Archer, Byington, Glennon & Levine LLP.

    1.4   **Court.** "Court" shall mean the United States District Court for the Eastern District of New York, the Honorable A. Kathleen Tomlinson presiding.

    1.5   **Covered Period.** "Covered Period" shall mean the period from February 9, 2006 to March 31, 2012.

    1.6   **Defendants.** "Defendants" shall mean JVK Operations Limited, Vinod Samuel, and Michael Connell.

1.7 **Defendants' Counsel.** "Defendants' Counsel" shall mean Law Office of Allen B. Breslow. Any notices required to be sent to Defendants under this Agreement shall be sent to Law Office of Allen B. Breslow, 6165 Jericho Turnpike, Commack, New York 11725.

1.8 **Effective; Effective Date.** "Effective" shall mean the occurrence of all of the following, and "Effective Date" shall be the date that all of the following have occurred:

   (A) the Court has entered Judgment and ruled on the motions for awards of service payments for Plaintiffs pursuant to Section 3.3 and for attorneys' fees and reasonable costs pursuant to Section 3.2; and

   (B) the Judgment and the rulings on such motions have become Final. "Final" means the later of

   (1) The time for seeking rehearing or reconsideration and/or appellate review has expired and there is no one with standing to seek such review; or

   (2) If rehearing, reconsideration and appellate review is sought, after any and all avenues of rehearing, reconsideration and appellate review have been exhausted and no further rehearing, reconsideration or appellate review is permitted, and the time for seeking such review has expired, and the Judgment and rulings on service awards and attorneys' fees and reasonable costs have not been modified, amended or reversed in any way.

1.9 **Escrow Account.** "Escrow Account" shall mean the interest-bearing account created and controlled by the Claims Administrator and the escrow account of Class Counsel in the event that a payment hereunder is required prior to the retention of the Claims Administrator.

1.10 **Spread of Hours.** "Spread of Hours" means any day in which the spread of hours exceeds ten (10) hours in one day (determined from the beginning and end of an employee's workday, including working time plus time off for meals and intervals off duty), an employee shall receive one additional hour of pay at the basic minimum hourly rate.

1.11 **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.12 **Litigation.** "Litigation" shall mean *Salguero, et al. v. JVK Operations Limited,*, Case No. 12-CV-0635 (JFB)(AKT), pending in the United States District Court for the Eastern District of New York.

1.13 **Net Settlement Payment.** "Net Settlement Payment" shall mean the remainder of the Settlement Payment after deductions for court-approved attorneys' fees and costs as

described in Section 3.2, court-approved service payments to Plaintiffs as described in Section 3.3, any fees associated with investing and liquidating the Settlement Payment as described in Section 3.1(B), and any taxes incurred directly or indirectly as a result of investing the Settlement Payment.

**1.14** **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

**1.15** **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia,* the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

**1.16** **Overtime Hour.** "Overtime Hour" means any hour over 40 in a workweek during the Covered Period that a Class Member worked and for which he or she was not paid an overtime premium.

**1.17** **Parties**. "Parties" shall mean Plaintiffs, the Class, and Defendants.

**1.18** **Plaintiffs.** "Plaintiffs" shall refer to the named plaintiffs in this action, Juan Jose Salguero, Olvin Ramon Rodriguez, Alicia Riveria Garcia, Thania Velasco, Carlos Roberto Garcia, And Yovany Sifortes Pinto, and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, attorneys, and assigns of such individuals, as applicable and without limitation.

**1.19** **Qualified Class Member.** "Qualified Class Member" shall mean a Class Member who does not opt out and whose identify is satisfactory established to the satisfaction of the Claims Administrator. The Claims Administrator, in consultation with counsel for the parties, shall be the final arbiter of who is a Qualified Class Member.

**1.20** **Settlement Payment.** "Settlement Payment" shall mean the $600,000 payment described in section 3.1(A) that Defendants pay to settle the Litigation as described in Section 3.1.

**2.** **APPROVAL AND CLASS NOTICE**

**2.1** **Retention of Claims Administrator.** Within five (5) calendar days after the execution of this Agreement, the Parties shall retain Settlement Services, Inc. to administer the claims process. The Claims Administrator shall be responsible for the claims administration process and distribution to Qualified Class Members as provided herein. Defendants agree to cooperate with the Claims Administrator and assist it in any way possible in administering the settlement. Defendants shall pay all of the Claims Administrator's fees.

**2.2** **Preliminary Approval by the Court**. On or before August 15, 2013, Plaintiffs will submit to the Court a Motion for an Order Conditionally Certifying the Settlement Class and Preliminarily Approving the Class Action Settlement, a proposed Notice of

Settlement of the Class Action Lawsuit and Fairness Hearing, and a proposed Order Preliminarily Approving the Settlement. Plaintiffs will seek, and Defendants will not oppose, conditional certification of the following Class:

> all persons who have worked as hourly, non-exempt employees on the production and distribution lines of the JVK facility located in Amityville, New York (excluding drivers, supervisors, and management personnel) anytime between February 9, 2006 and March 31, 2012.

If the Court denies the Motion for Conditional Certification of the Settlement Class and Preliminary Approval of the Class Action Settlement, then the Litigation will resume and any payment tendered by Defendants shall be returned to them unless the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. If a mutually agreed class settlement is not approved, the case will proceed as if no settlement had been attempted, and Defendants retain the right to contest whether this case should be maintained as a class action or collective action, retain the right to contest the merits of the claims being asserted by Plaintiffs in this Litigation, and preserve all other defenses and affirmative defenses. In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, propose deadlines for Plaintiffs' Motion for Conditional Certification and Motion for Class Certification.

**2.3** **Class Notice.**

(A) By September 30, 2013, Class Counsel will provide the Claims Administrator with Exhibit A, consisting of (i) the names, last known addresses, positions, and social security numbers of all Class Members; (ii) the overtime hours worked by each Class Member; and (iii) the spread of hours payment due to each Class Member. With the exception of addresses, this data, and any other data provided by Defendants to the Claims Administrator pursuant to this Agreement, shall be conclusively presumed to be accurate.

(B) Within fifteen (15) calendar days after the Order Granting Preliminary Approval, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to all Class Members (which is attached as Exhibit B) using each individual's last known address as recorded in Defendants' records. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable and shall attempt re-mailings as described below. The Claims Administrator shall notify Class Counsel and Defendants' Counsel of any mail sent to Class Members that is returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s) as set forth in Section 2.4.

**2.4** **Class Member Opt-Out.**

(A) Any Class Member may request exclusion from the Class by "opting out." Class Members who choose to opt out must mail a written, signed statement to the Claims Administrator that he or she is opting out of the monetary portion of the Settlement ("Opt-Out Statement"). To be effective, such Opt-Out Statements must be sent via First Class United States Mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be thirty (30) calendar days after the Claims Administrator mails the Notice. The 30-day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 30-day period for any such Class Member will begin to run from the date of the second mailing (or, if there are more than 2 mailings, the final mailing) to such Class Member. The Claims Administrator shall not attempt more than three mailings of the Notice of Proposed Class Action Lawsuit and Fairness Hearing to any Class Member. The end of the "Opt-Out Period" shall be thirty (30) calendar days after the last day on which the Claims Administrator makes a mailing. The Claims Administrator shall, within ten (10) calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendants' Counsel in writing by email and overnight delivery of the precise date of the end of the Opt-Out Period.

(B) The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendants' Counsel not later than three calendar days after receipt thereof. The Claims Administrator also shall, within three calendar days of the end of the Opt-Out Period, file with the Clerk of Court, stamped copies of any Opt-Out Statements. The Claims Administrator shall, within twenty-four (24) hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

**2.5** **Release.** A Class Member who does not opt out pursuant to Section 2.4 will be deemed eligible for a payment hereunder. Payments will be made by checks issued by the Claims Administrator. All checks issued to Qualified Class Members shall contain, on the back of the check, the following limited endorsement:

> By endorsing this check, I opt in to the Fair Labor Standards Act class and release Defendants from all New York Labor Law and Fair Labor Standards Act claims for unpaid wages, overtime, spread of hours through March 31, 2012, whether expressly asserted in the Litigation or not.

**2.6** **Objections to Settlement.**

6

 (A) Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be sent to the Claims Administrator via First-Class United States mail, postage prepaid, and be received by the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be for each Class Member thirty (30) days after the Claims Administrator mails such Notice to such Class Member. The Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery not later than three (3) calendar days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within three (3) calendar days after the end of the Opt-Out Period.

 (B) An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided in Section 2.6(A). Any Class Member who has submitted an Opt-Out Form may not submit objections to the settlement.

 (C) The Parties may file with the Court written responses to any filed objections not later than fifteen (15) calendar days before the Fairness Hearing.

**2.7** **Motion for Judgment and Final Approval.** Not later than fifteen (15) calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

**2.8** **Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things: (a) certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out pursuant to Section 2.4(A), (d) dismiss the Litigation with prejudice, and (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement.

**2.9** **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Parties shall proceed as follows: the Litigation will resume and the Settlement Payment shall be immediately returned to Defendants unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

7

(A)  The Litigation will proceed as if no settlement had been attempted. In that event, the class certified for purposes of settlement shall be decertified, and Defendants retain the right to contest whether this Litigation should be maintained as a class action and/or collective action, to contest the merits of the claims being asserted by Plaintiffs in this action, and preserve all other defenses and affirmative defenses. In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, propose deadlines for Plaintiffs' Motion for Conditional Certification and Motion for Class Certification; and

(B)  The Court will provide notice to Class Members that the Agreement did not receive final approval and that as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

## 3. SETTLEMENT TERMS

### 3.1 Settlement Payment.

(A)  Defendants agree to pay a maximum payment of total of six hundred thousand dollars ($600,000.00) in accordance with the payment schedule set forth in section 3.1(A)(i) and 3.1(A)(ii), below, which shall resolve and fully and finally satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Qualified Class Members, any court-approved service payments to Plaintiffs, any fees associated with investing and liquidating the Settlement Payment, and any taxes incurred directly or indirectly by Defendants as a result of investing the Settlement Payment. Other than the employer payroll taxes as described in Section 3.5(C), and the Claims Administrator's fees as described in Section 2.1, Defendants will not be required to pay more than $600,000 under the Agreement, as follows:

(i)  Defendants shall make the following deposits into the Escrow Account: $20,000 on or before September 15, 2013 or five (5) business days following the full execution of this Agreement, whichever is later; $20,000 per month for the months of October, November, and December 2013, due by the 15th of each month; $7,500 per month for months of January, February, and March 2014, due by the 15th of each month; and, $13,000 per month commencing April 2014, and each succeeding month thereafter until the Settlement Payment has been satisfied. Defendants shall be responsible for payment of a balloon payment, due on or before March 15, 2015, representing the difference between the funds made through February 15, 2015 and the Settlement Payment necessary to satisfy sums found be to be due and owing to located Class Members (as

    described in Section 3.4). In no event shall the Defendants be liable to pay more than the Settlement Payment.

  (ii) Defendants shall make a payment of $50,000 payable to the firm of Archer, Byington, Glennon & Levine, LLP as follows: $25,000 on or before September 1, 2013 or the date of the signing of this Agreement, whichever is earlier and $25,000 by October 1, 2013.

  (iii) If Defendants fail to make any of the above payments on the above dates, interest shall accrue at a rate of five percent (5%) per annum on the missed payment until such payment is tendered and any balance owed towards the Settlement Payment as of the date of a final breach shall be accelerated and become due and owing in full. Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Payment.

(B) Within five (5) business days after entry of the Order Granting Preliminary Approval, Defendants will each provide Plaintiffs with a Confession of Judgment for $600,000, less any amounts already paid pursuant to this Agreement, which may be exercised only in accordance with its express terms, copies of which are annexed hereto as Exhibit C.

  (1) Counsel for the Plaintiffs shall hold the Affidavit(s) of Confession of Judgment in escrow until such time as there is a default in the payments owed by Defendants as set forth in Section 3.1(A). In the event of a default, Plaintiffs must provide notice of the default and provide a minimum of ten (10) days opportunity for Defendants to cure the default. Plaintiffs shall provide such notice by serving a notice of default upon counsel for the Defendants' Counsel via facsimile and electronic mail.

(C) On April 1, 2014, or within five (5) days of the Effective Date, whichever is later, the Claims Administrator will distribute the money in the Escrow Account, less the $43,725 referenced in Section 3.1(F), by making the following payments:

  (1) Paying Class Counsel one-third of the money in the Escrow Account (but no more than the one-third of the amount approved by the Court as attorneys' fees for Class Counsel) which shall be applied towards an award of attorneys' fees as described in Section 3.2(A).

  (2) Reimbursing Class Counsel for all costs and expenses approved by the Court as described in Section 3.2(A).

  (3) Paying the amounts described in Section 3.3.

       (4)     Paying Qualified Class Members the first of their two payments as described in Section 3.4.

  (D)     On April 1, 2015, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

       (1)     Paying Class Counsel the balance of the amount approved by the Court as attorneys' fees for Class Counsel, which shall be applied towards an award of attorneys' fees as described in Section 3.2(A).

       (2)     Paying any additional costs, separate and apart from the costs referenced in Section 3.2(A), incurred by Class Counsel and approved by the Court.

       (3)     Paying Qualified Class Members the second of their two payments as described in Section 3.4.

  (E)     Before making the payments described in Section 3.1(C), the Claims Administrator shall reserve a total of $43,725 (the "Reserve") in the Escrow Account to cover payments to Qualified Class Members who were not included, for whatever reason, on the list of Class Members attached hereto as Exhibit A. To the extent any of the Reserve remains, it shall be distributed in the second payment referenced in Section 3.1(D) and according to the terms of Section 3.4(E), if applicable.

## 3.2 Settlement Amounts Payable as Attorneys' Fees and Costs.

  (A)     At the Fairness Hearing, Class Counsel shall petition the Court for no more than 33% of the Settlement Payment as an award of attorneys' fees, specifically the attorney's fee application will be $157,258. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Settlement Payment, which shall not exceed $10,000 (as of the date of the signing of this Agreement, Class Counsel's costs are $1,857.94). Defendants will not oppose such a fee and/or cost application. Defendants shall have no additional liability for fees and costs, including without limitation, administrative costs, expert fees and costs, or attorneys' fees and costs, except for the employer payroll taxes as described in Section 3.5(C) and the fees and expenses of the Claims Administrator as described in Section 2.1.

  (B)     The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

**3.3** **Payments to Plaintiffs.** (a) At the Fairness Hearing, Plaintiffs Juan Jose Salguero, Olvin Ramon Rodriguez, Alicia Riveria Garcia, Thania Velasco, Carlos Roberto Garcia, and Yovany Sifortes Pinto will apply to the Court to receive no more than $5,000 each from the Settlement Payment for services rendered to the Class. Defendants will not oppose such applications. The service payments and the requirements for obtaining such payments are separate and apart from, and in addition to, other recovery to which these Plaintiffs might be entitled, and other requirements for obtaining such recovery, under other provisions of this Agreement, but shall not increase Defendants' liability hereunder. The substance of the above-referenced application for service awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service payments shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

(b) At the Fairness Hearing, Plaintiff Juan Jose Salguero will apply to the Court to receive no more than $10,000 from the Settlement Payment for settlement of his NYLL § 215 claim set forth in the Amended Complaint. Defendants will not oppose such application. The service payments and the requirements for obtaining such payments are separate and apart from, and in addition to, other recovery to which Plaintiff Juan Jose Salguero might be entitled, and other requirements for obtaining such recovery, under other provisions of this Agreement, but shall not increase Defendants' liability hereunder. The substance of the above-referenced application for this payment to Plaintiff Juan Jose Salguero is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application of Plaintiff Juan Jose Salguero shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

**3.4** **Distribution to Class Members.**

(A) A Class Member who does not opt out pursuant to Section 2.6(A) will be deemed eligible for a payment hereunder, and, subject to the releases set forth in Sections 2.5 and 4.1 shall be deemed a Qualified Class Member.

(B) The Net Settlement Payment will be allocated as follows: the amounts set forth in Exhibit B shall constitute the wage, overtime, and spread of hours payments due each Class Member, plus payment of liquidated damages payable under the NYLL and the FLSA. Liquidated damages shall be calculated as follows: (i) the liquidated damages owed to a Class Member will vary depending on the number of Class Members who opt-in to the FLSA collective action as the collective action claims are subject to the maximum liquidated damages of one hundred percent (100%) of unpaid overtime owed pursuant to the FLSA; (ii) each Class Member who is eligible to, and does, opt-in to the FLSA collective action shall be eligible to receive up to the maximum liquidated damages of one hundred percent

(100%) of unpaid overtime owed pursuant to the FLSA for the overtime payments owed between February 12, 2009 and March 30, 2012; (iii) each Class Member shall be eligible to receive up to the maximum liquidated damages of twenty-five (25%) of unpaid overtime and spread of hours owed pursuant to the NYLL for the payments owed prior to February 12, 2009.

(C) A Qualified Class Member's proportionate share of the Net Settlement Payment shall be determined by the Claims Administrator pursuant to the following formula:

(1) Each Qualified Class Member shall be eligible to receive a minimum recovery of the amounts set forth in Exhibit B.

(2) Each Qualified Class Member's claim shall be paid from the funds available in the Settlement Payment after payment of the sums set forth in sections 3.2 and 3.3 of this Agreement.

(3) Each Qualified Class Member's claim shall be paid in accordance with the payment schedule set forth in Sections 3.1(D) and 3.1(E) as follows: (i) the payments to Qualified Class Members shall be based upon the number of Qualified Class Members located by the Claims Administrator. The aggregate payment owed to Qualified Class Members shall be calculated based on the number of Qualified Class Members located by the Claims Administrator pursuant to the process set forth in Section 2.3. For example, if 100% of Qualified Class Members are located, they will each receive 93% of their calculated wage claim; however, located Qualified Class Members shall receive a higher portion (up to 100%) of their wage claim, plus applicable FLSA and NYLL liquidated damages (up to 100% of applicable FLSA and 25% NYLL liquidated damages). Qualified Class Members who are not located by March 1, 2015 shall not receive a distribution under this Agreement and the Claims Administrator shall only be responsible for making payments to located Qualified Class Members as set forth in Section 3.1 and all other payments required by this Agreement, including 3.2 and 3.3.

(D) Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings, comply with tax reporting obligations as described in Section 3.5, and identify the proper names of Qualified Class Members during the Class notification process and review of received claims.

(E) In the event the Escrow Account holds more funds than necessary to pay the amounts set forth in Sections 3.2, 3.3, and 3.4 as of March 15, 2015, the Claims Administrator shall be authorized to return such overage to the Defendants on or after April 1, 2015, but in no event later than May 1, 2015.

3.5 **Taxability of Settlement Payments.**

    (A)    For tax purposes, 50% of payments to Qualified Class Members pursuant to Section 3.1(D)(4) and 3.1(E)(3) shall be treated as back wages and 50% of such payments shall be treated as liquidated damages and interest.

    (B)    Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Sections 3.1(D)(3) and 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

    (C)    Defendants shall pay all state and federal payroll taxes required by applicable law, including the employer's share of any required FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as back wages pursuant to Section 3.5(A).

    (D)    Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that each individual Class Member will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold Defendants and the Claims Administrator harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on Defendants or the Claims Administrator as a result of a Class Member's failure to timely pay such taxes. Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

3.6 **Injunctive Relief**

    (A)    Defendants agree to the following relief for a period of one year from the date that the Parties execute this Agreement. This relief shall be subject to the approval and continuing jurisdiction of the United States District Court for the Eastern District of New York during the one-year period.

        (1)    Defendants agree to comply with the New York Labor Law and the Fair Labor Standards Act.

13

(2) Defendants agree to pay overtime compensation at the rate of time and one-half to employees who work more than 40 hours in a workweek.

(3) Defendants agree to pay the spread-of-hours payment of one additional hour of pay at the basic minimum hourly rate to employees on any day in which an employee's spread of hours exceeds ten (10) hours in one day (determined from the beginning and end of an employee's workday, including working time plus time off for meals and intervals off duty).

(4) Defendants agree not to retaliate against any workers for their participation in this Settlement or Litigation.

## 4. RELEASE

### 4.1 Release of Claims.

(A) By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiffs and each individual Qualified Class Member forever and fully release Defendants from all New York Labor Law claims for unpaid wages, overtime, or spread of hour claims through March 30, 2012, whether expressly asserted in the Litigation or not. ("NYLL Released Claims"). The NYLL Released Claims include all New York Labor Law claims for unpaid overtime wages, misappropriated service charges, and attorneys' fees and costs related to such claims.

(B) In addition to the NYLL Released Claims described in Section 4.1(A), all Qualified Class Members forever and fully release Defendants from all Fair Labor Standards Act claims for unpaid wages and overtime claims through March 30, 2012, whether expressly asserted in the Litigation or not. ("FLSA Released Claims"). The FLSA Released Claims include all Fair Labor Standards Act claims for unpaid overtime wages, liquidated damages, and attorneys' fees and costs related to such claims.

(C) In addition to the NYLL Released Claims described in Section 4.1(A), Plaintiff Juan Salguero forever and fully releases Defendants from all Labor Law § 215 or Fair Labor Standards Act § 215 claims for retaliation that he could assert against the Defendants, whether expressly asserted in the Litigation or not. ("FLSA Released Claims"). The FLSA Released Claims include all Fair Labor Standards Act claims for unpaid overtime wages, liquidated damages, and attorneys' fees and costs related to such claims.

(D) In addition to the NYLL Released Claims and the FLSA Released Claims, by signing the General Release of Plaintiff and Class Representative, Plaintiffs Juan Jose Salguero, Olvin Ramon Rodriguez, Alicia Riveria Garcia, Thania Velasco, Carlos Roberto Garcia, And Yovany Sifortes Pinto irrevocably and

14

unconditionally release, remit, acquit and discharge all Defendants, and their past and present subsidiaries, parent corporations, affiliates, owners, partners, joint venturers, officers, directors, insurers, agents, present and former employees, attorneys, successors, and assigns (all of whom are hereinafter collectively referred to as "Releasees"), jointly and individually, from any and all claims, known or unknown, which they, their heirs, successors or assigns have or may have against them. Without limiting the generality of the foregoing in any way, Plaintiffs hereby release Releasees from any and all claims, liability and causes of action arising out of their employment with any of the Defendants, including any claims that were raised or could have been raised in this Litigation. This Release relates to any claim of Plaintiffs whatsoever and includes any and all liability which Releasees have or may have to Plaintiffs whether denominated claims, demands, causes of action, obligations, damages, liquidated damages, minimum wages, back pay, front pay, compensatory damages, punitive damages. damages for pain and suffering, costs, attorneys' fees or liabilities, which exist as of this time.

4.2 **Release of Fees and Costs To Settled Matters**. Class Counsel and Plaintiffs, on behalf of the Class and each individual Qualified Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class. Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals.

4.3 **No Assignment**. Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant ant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

4.4 **Non-Admission of Liability**. By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement. (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c)

are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

## 5. MISCELLANEOUS

**5.1** **Cooperation Between the Parties; Further Acts**. The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2** **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.3** **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.4** **Arm's Length Transaction; Materiality of Terms**. The Parties have negotiated all the terms and conditions of this Agreement at arm's length and through their counsel. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**5.5** **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.6** **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.7** **Blue Penciling**. Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.8** **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of

law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.9 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.10 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.11 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.

5.12 Facsimile Signatures. Any party may execute this Agreement by causing its counsel to sign on the designated signature block bellow and transmitting that signature page via facsimile to counsel for the other party. any signature made and transmitted by facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile.

Dated: August , 2013                JVK OPERATIONS LIMITED

                                    By: _____

Dated: August , 2013                VINOD SAMUEL

                                    _____

Dated: August , 2013                MICHAEL CONNELL

                                    _____

Dated: August , 2013                JUAN JOSE SALGUERO

17

Dated: August   , 2013          OLVIN RAMON RODRIGUEZ

Dated: August   , 2013          Santa ALICIA RIVERIA GARCIA

Dated: August   , 2013          THANIA VELASCO

Dated: August   , 2013          CARLOS ROBERTO GARCIA

Dated: August   , 2013          YOVANY SIFORTES PINTO

735757

18